## IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

SUSAN K. TODD,

        Plaintiff,

and

STATE OF TENNESSEE,

        Intervening Plaintiff/
        Appellant,

VS.

WEAKLEY COUNTY d/b/a WEAKLEY
COUNTY NURSING HOME,

        Defendant,

and

NINA SNYDER, Individually,
DAVID BRADLEY, Individually,
SHIRLEY INSCO, Individually, and
SHARON JENNINGS, Individually,

        Defendants/Appellees.

Trial Court No. 2718

Appeal No. 02A01-9708-CV-00197

**FILED**

**July 16, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

APPEAL FROM THE CIRCUIT COURT OF WEAKLEY COUNTY
AT DRESDEN, TENNESSEE
THE HONORABLE WILLIAM B. ACREE, JUDGE

**JOHN KNOX WALKUP**
**Attorney General & Reporter**
**MICHAEL E. MOORE**
**Solicitor General**
**MARY BYRD FERRARA**
**Assistant Attorney General**
Nashville, Tennessee
Attorneys for Appellant State of Tennessee

**THOMAS H. RAINEY**
**ANGELA C. YOUNGBERG**
**RAINEY, KIZER, BUTLER, REVIERE & BELL, P.L.C.**
Attorneys for Defendants/Appellees

**AFFIRMED IN PART, REVERSED IN PART
AND REMANDED**

                                      **ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**HOLLY KIRBY LILLARD, J.**

The State of Tennessee, as the intervenor in this medical malpractice action brought by Plaintiff Susan K. Todd, appeals the trial court's order which granted the motion to dismiss filed by Defendants Nina Snyder, David Bradley, Shirley Insco, and Sharon Jennings. In granting the Defendants' motion to dismiss, the trial court ruled that certain provisions of the Tennessee Governmental Tort Liability Act relating to health care practitioners were unconstitutional in that they were vague, they violated equal protection principles, and they violated the Defendants' right to a jury trial. Contrary to the trial court's ruling, we conclude that the challenged statutory provisions withstand constitutional scrutiny and, thus, we reverse that portion of the trial court's judgment eliding the provisions.

## I. Factual and Procedural History

In September 1995, Plaintiff Susan K. Todd filed this medical malpractice action against the individual Defendants and against Weakley County, d/b/a Weakley County Nursing Home, pursuant to the Tennessee Governmental Tort Liability Act (GTLA). Todd, a resident of the Weakley County Nursing Home, alleged that she was injured in May 1995 when two nurse's aides, Defendants Shirley Insco and Sharon Jennings, negligently dropped Todd as they attempted to move her from her wheelchair to her bed. The complaint further alleged that Defendant Nina Snyder, the Nursing Home's administrator, and Defendant David Bradley, the licensed practical nurse who was the charge nurse at the time of Todd's injury, negligently failed to provide and maintain adequate care and supervision of Todd. Todd's complaint sought $750,000 in damages for her injuries.

The individual Defendants responded by filing a motion to dismiss in which they asserted, inter alia, that they were immune from suit under the GTLA because they were employees of a governmental entity. The Defendants further contended that they were not subject to suit under the exception for "health care practitioners" found in section 29-20-310 of the GTLA because the Defendants were not "health care practitioners." See T.C.A. §§ 29-20-310(b), (c) (Supp. 1994). The Defendants later moved for summary

2

judgment, apparently on the same grounds asserted in their motion to dismiss. The trial court denied the Defendants' motion for summary judgment, however, finding that the record contained insufficient evidence to determine whether the individual Defendants met the definition of "health care practitioner."

After Todd was permitted to amend her complaint, the Defendants filed an answer and another motion to dismiss. This time, in support of their motion to dismiss, the Defendants contended that the GTLA's exception for health care practitioners was unconstitutional because, inter alia, the exception was impermissibly vague and it violated the guaranty of equal protection and the right to a trial by jury. The State of Tennessee, through the Office of the Attorney General, then filed a motion requesting leave to intervene in this action for the sole purpose of defending the constitutionality of section 29-20-310 of the GTLA. The trial court granted the State's motion to intervene.

After considering the arguments of the Defendants and the State, the trial court entered an order granting the individual Defendants' motion to dismiss and ruling that the challenged portions of section 29-20-310 were unconstitutional. The trial court later entered an order directing the entry of a final judgment as to the individual Defendants pursuant to Tennessee Rule of Civil Procedure 54.02. This appeal by the State followed.

## II. The Challenged Provisions of the GTLA

As pertinent, section 29-20-310 of the GTLA contains the following provisions:

> (b)     No claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the governmental entity is removed by this chapter unless the claim is one for medical malpractice brought against a health care practitioner. No claim for medical malpractice may be brought against a health care practitioner or judgment entered against a health care practitioner for damages for which the governmental entity is liable under this chapter, unless the amount of damages sought or judgment entered exceeds the minimum limits set out in § 29-20-403 or the amount of insurance coverage actually carried by the governmental entity, whichever is greater, and the

3

governmental entity is also made a party defendant to the action.

(c)     No claim may be brought against an employee or judgment entered against an employee for injury proximately caused by an act or omission of the employee within the scope of the employee's employment for which the governmental entity is immune in any amount in excess of the amounts established for governmental entities in § 29-20-403, unless the act or omission was willful, malicious, criminal, or performed for personal financial gain, or unless the act or omission was one of medical malpractice committed by a health care practitioner and the claim is brought against such health care practitioner.

T.C.A. §§ 29-20-310(b), (c) (Supp. 1994). In essence, the challenged provisions of the GTLA remove the immunity of certain governmental employees in the event that (1) the governmental employee is a health care practitioner against whom a medical malpractice action has been brought, and (2) the amount of damages sought or judgment entered exceeds the GTLA's minimum limits set out in section 29-20-403. See T.C.A. § 29-20-403(b)(2)(A) (for actions arising on or after July 1, 1987, minimum limits of "not less than one hundred thirty thousand dollars ($130,000) for bodily injury or death of any one (1) person in any one (1) accident, occurrence or act"). Although the GTLA creates this exception from immunity for health care practitioners, the GTLA does not specifically define the term "health care practitioner."

### III.  The Trial Court's Ruling

In granting the Defendants' motion to dismiss, the trial court sustained three of the Defendants' constitutional attacks on section 29-20-310's provisions relative to health care practitioners. The trial court first ruled that the challenged statutory provisions violated the constitutional guaranty of equal protection, reasoning that the court could not "conceive of any rational basis for classifying health care practitioners differently than other governmental employees or for classifying them with those who act willfully, maliciously, criminally, or for personal financial gain." The trial court also ruled that the challenged statutory provisions were unconstitutionally vague because the legislature did not define the term "health care practitioner" and, thus, the determination of "whether or not a nursing

4

home administrator, a licensed practical nurse and two nurse's aids are health care practitioners . . . would require conjecture as to the meaning of the term health care practitioner." Finally, the trial court ruled that the provisions violated the Defendants' constitutional right to a jury trial because, when read in conjunction with other provisions of the GTLA, the challenged provisions did not entitle the Defendants to a jury trial. To effectuate its ruling, the trial court applied the doctrine of elision and elided section 29-20-310's provisions relating to health care practitioners.

### IV. The Defendants' Vagueness Challenge

In light of the GTLA's failure to define the term "health care practitioner," we first address the trial court's ruling that the challenged provisions are unconstitutionally vague. When a party attacks a statute on constitutional grounds, such as vagueness, the trial court and this court are required to indulge every presumption in favor of the statute's validity and to resolve any doubt in favor of, rather than against, the constitutionality of the statute. Dorrier v. Dark, 537 S.W.2d 888, 891 (Tenn. 1976); Estrin v. Moss, 430 S.W.2d 345, 351 (Tenn. 1968), appeal dismissed, 393 U.S. 318 (1969). Despite this presumption of validity, however, the courts must declare a statute void for vagueness if persons "of common intelligence must necessarily guess at its meaning and differ as to its application." Williams v. Department of Health & Env't, 880 S.W.2d 955, 959 (Tenn. App. 1994) (quoting Leech v. American Booksellers Ass'n, 582 S.W.2d 738, 746 (Tenn. 1979)).

In the present case, the trial court ruled that the challenged provisions of the GTLA were void for vagueness because the legislature failed to define the term "health care practitioner" and, thus, persons of common intelligence must necessarily guess at the term's meaning and differ as to the statute's application. We respectfully disagree with the trial court's ruling on this issue. The legislature's failure to define a specific statutory term is not fatal to a statute which has been challenged on vagueness grounds. Paty v. McDaniel, 547 S.W.2d 897, 908 (Tenn. 1977), rev'd on other grounds, 435 U.S. 618 (1978); Dorrier v. Dark, 537 S.W.2d 888, 893 (Tenn. 1976); Arutanoff v. Metropolitan Gov't,

5

448 S.W.2d 408, 412 (Tenn. 1969). When the legislature fails to define a statutory term, the undefined term must be given its usual and ordinary meaning. Woods Lumber Co. v. MacFarland, 355 S.W.2d 448, 451 (Tenn. 1962); Brookside Mills, Inc. v. Atkins, 322 S.W.2d 217, 218 (Tenn. 1959); Carbide & Carbon Chems. Corp. v. Carson, 239 S.W.2d 27, 37 (Tenn. 1951), aff'd, 342 U.S. 232 (1952); Southern Coal Co. v. McCanless, 192 S.W.2d 1003, 1005 (Tenn. 1946).

Black's Law Dictionary defines "practitioner" as one "who is engaged in the exercise or employment of any art or profession." Black's Law Dictionary 1172 (6th Ed. 1990). Another source defines "practitioner" as "one who practices a profession." Webster's Ninth New Collegiate Dictionary 923 (1990). These sources, in turn, define "profession" as a "vocation or occupation requiring special, usually advanced, education, knowledge, and skill" and "a calling requiring specialized knowledge and often long and intensive academic preparation." Black's Law Dictionary 1210 (6th Ed. 1990); Webster's Ninth New Collegiate Dictionary 939 (1990).

In Tennessee, the practice of the healing arts is governed and regulated by Title 63 of the Tennessee Code Annotated. T.C.A. §§ 63-1-102(2), 63-1-115, 63-1-119 (1997). Although they do not specifically define the term "health care practitioner," Title 63 and other Code provisions generally use the terms "health care practitioner," "health practitioner," "practitioner of a health care discipline," and "practitioner of the healing arts" to refer to persons who practice one of the professions of the healing arts licensed and regulated under Title 63. See, e.g., T.C.A. § 36-3-621 (Supp. 1997) (referring to "[a]ny health care practitioner licensed or certified under title 63"); T.C.A. § 63-1-116 (1997) (authorizing the boards of the respective branches of the healing arts to regulate advertising by "practitioners of such healing arts who are under the jurisdiction of such boards"), T.C.A. § 63-1-120(6) (1997) (referring to "practitioners of such healing arts"); T.C.A. § 63-1-122 (1997) (referring to "practitioners of the various branches of the healing arts"), T.C.A. § 63-1-136(a) (1997) (referring to "health practitioners"), T.C.A. § 63-6-703(1) (1997) (defining "health care provider" as, inter alia, any "other practitioner of a health care

6

discipline, the professional practice of which requires licensure or certification under the provisions of [Title 63]"); see also Richardson v. Board of Dentistry, 913 S.W.2d 446, 449 (Tenn. 1995) (noting that T.C.A. § 63-1-134 authorizes health related boards to assess civil penalties against "unlicensed practitioners in health related professions"); Spunt v. Fowinkle, 572 S.W.2d 259, 262 (Tenn. App. 1978) (noting that, under T.C.A. § 63-122 (now § 63-1-122), the Licensing Board of Healing Arts has jurisdiction of all "licensed practitioners of the healing arts in Tennessee").

In light of these authorities, we hold that the term "health care practitioner" is not unconstitutionally vague and that the trial court erred in so ruling. In accordance with the usual and ordinary meaning of the term "health care practitioner," and in accordance with the legislature's use of this term in the Code, we conclude that the term "health care practitioner" means one who is engaged in the exercise or employment of a health care vocation or occupation which requires advanced or specialized education, knowledge, and skill, and which requires licensure or certification under the provisions of Title 63. This definition includes, but is not limited to, physicians, physician assistants, pharmacists, psychologists, physical therapists, and registered nurses. See T.C.A. §§ 63-6-201, 63-6-207, 63-6-209, 63-7-105, 63-9-104, 63-10-506, 63-11-208, 63-13-301 to -303, 63-19-105, 63-19-202 (1997). As pertinent to this appeal, this definition also includes licensed practical nurses and nursing home administrators, but it does not include nurse's aides. See T.C.A. §§ 63-7-110, 63-16-104 to -108 (1997).

Defendants David Bradley and Nina Snyder are included in this definition of "health care practitioner" because both are engaged in the exercise or employment of an advanced or specialized health care vocation or occupation, the practice of which requires licensure or certification under the provisions of Title 63. Defendant David Bradley is a licensed practical nurse (LPN). See T.C.A. § 63-7-110 (1997) (governing the licensure of practical nurses). In order to become licensed as an LPN, Bradley attended nursing school at Dresden Vocational Technical School, completed a practical experience requirement, and passed a written examination. Defendant Nina Snyder is the licensed nursing home

7

administrator who was in charge of all operations at the Weakley County Nursing Home, including health care operations, at the time of Todd's injury. See T.C.A. §§ 63-16-104 to -108 (1997) (governing the licensure of nursing home administrators). In order to obtain her license, Snyder worked for a period of time with another licensed nursing home administrator, took a correspondence course through George Washington University, and passed a state-administered examination. To maintain her license, Snyder must fulfill minimum continuing education requirements each year.

In contrast, we conclude that Defendants Shirley Insco and Sharon Jennings do not qualify as "health care practitioners." Title 63 of the Code regulates the "[p]ractice of professional nursing" and, thus, governs the licensure of registered nurses and licensed practical nurses, as well as the certification of nurse practitioners; however, Title 63 does not provide for the licensure or certification of nurse's aides. T.C.A. §§ 63-7-103(a)(1), 63-7-105, 63-7-110, 63-7-123 (1997). In general, nurse's aides are workers who assist "trained nurses in a hospital by performing unspecialized services," such as "making beds or giving baths." Merriam-Webster's Medical Desk Dictionary 485 (1993). Specifically, in the nursing home setting, nurse's aides, also known as nursing assistants, are persons who are trained to assist licensed nurses (both registered nurses (RN's) and LPN's) by performing "functions which can safely, efficiently and lawfully be done by unlicensed personnel." Tenn. Comp. R. & Regs. 1200-8-6-.04(1)(b) (revised Aug. 1997). By definition, therefore, nurse's aides are not health care practitioners because they are not licensed to practice professional nursing pursuant to Title 63 and because their job is to perform unspecialized services for which a licensed practitioner is not needed. See also Tenn. Op. Att'y Gen. 96-112 (opining that certified nursing assistants employed by local school board could not provide health care procedures under T.C.A. § 49-5-415(b) because statute required such procedures to be performed by "appropriately licensed health care professionals").

In concluding that nurse's aides are not health care practitioners, we have considered the requirement that all nurse's aides who work in Tennessee nursing homes

must be "certified" by the Board for Licensing Health Care Facilities.  See T.C.A. §§ 68-11-209(e)(1), 68-11-803(c)(22) (1996 & Supp. 1997); Tenn. Comp. R. & Regs. 1200-8-6-.04(1)(h), (2)(e) (revised May 1995).  A nursing home may not employ an individual as a nurse's aide unless the individual has satisfactorily completed a seventy-five hour training and testing program approved by the Board.  T.C.A. §§ 68-11-209(e)(1), 68-11-803(c)(22) (1996 & Supp. 1997); Tenn. Comp. R. & Regs. 1200-8-6-.04(2)(e) (revised May 1995).  We note, however, that this certification requirement is imposed on the nursing home itself and does not appear to be an attempt to regulate any recognized "profession" of "nurse's aides."  See T.C.A. §§ 68-11-209(e)(1), 68-11-803(c)(22) (1996 & Supp. 1997).  This observation is buttressed by the fact that the same certification requirement does not apply to nurse's aides who work in the hospital setting, as opposed to the nursing home setting.  Although a hospital is authorized to employ "[o]ther personnel," such as nurse's aides, "to assist the licensed personnel in patient care activities," the rules and regulations apparently impose no minimum requirements for the hospital's training of such personnel.  Tenn. Comp. R. & Regs. 1200-8-3-.03(3)(c), (f) (revised Aug. 1997).

In sum, we conclude that nurse's aides are not engaged in the exercise of the profession of nursing and that they are not health care practitioners as that term is used in the Code.  Inasmuch as Insco and Jennings are not health care practitioners, we further hold that they can have no individual liability under the provisions of Tennessee Code Annotated section 29-20-310 and that the trial court properly dismissed Todd's complaint as to these two Defendants.

### V.  The Defendants' Equal Protection Challenge

As for the two remaining Defendants, the trial court also ruled that section 29-20-310 was unconstitutional on equal protection grounds. Both the United States Constitution and the Tennessee Constitution guarantee to citizens the equal protection of the laws. Brown v. Campbell County Bd. of Educ., 915 S.W.2d 407, 412 (Tenn. 1995) (citing U.S.

9

Const. amend. XIV; Tenn. Const. art. I, § 8, art. XI, § 8), cert. denied, 517 U.S. 1222 (1996). The concept of equal protection guarantees that all persons similarly situated shall be treated alike. Doe v. Norris, 751 S.W.2d 834, 841 (Tenn. 1988) (citing F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415 (1920)). Conversely, the guaranty of equal protection does not require things which are different in fact or opinion to be treated the same. Doe v. Norris, 751 S.W.2d at 841.

The "drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one," and "[p]erfection in making the necessary classifications is neither possible nor necessary." Harrison v. Schrader, 569 S.W.2d 822, 825 (Tenn. 1978) (quoting Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 314 (1976)). As our supreme court has stated, "'[t]he initial discretion to determine what is 'different' and what is 'the same' resides in the legislatures of the States,' and legislatures are given considerable latitude in determining what groups are different and what groups are the same." Doe v. Norris, 751 S.W.2d at 841 (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)). Accordingly, statutes which create classifications are presumed valid, and they will be upheld if "some reasonable basis can be found for the classification, or if any state of facts may reasonably be conceived to justify it." Harrison v. Schrader, 569 S.W.2d at 825.

Our supreme court has summarized the test to be applied as follows:

> The test to be applied has been set forth in numerous cases. The classification must rest upon a reasonable basis. If it has a reasonable basis, it is not unconstitutional merely because it results in some inequality. Reasonableness depends upon the facts of the case and no general rule can be formulated for its determination. . . .
>
> The burden of showing that a classification is unreasonable and arbitrary is placed upon the individual challenging the statute; and if any state of facts can reasonably be conceived to justify the classification or if the reasonableness of the class is fairly debatable, the statute must be upheld. . . .
>
> Before the classification will be held to violate the equal protection guaranty, it must be shown that it has no reasonable or natural relation to the legislative objective. . . . In addition,

10

the statute must apply alike to all who fall within, or can reasonably be brought within the classification.

Harrison v. Schrader, 569 S.W.2d at 825-26 (citations omitted).

Applying the foregoing standard, we cannot say that no reasonable or rational basis exists for the legislature's distinction between medical malpractice actions against health care practitioners and actions against other governmental employees under the GTLA. The "[c]lassification of businesses and occupations and callings . . . and other things of the kind which deal with the public may be classified by ordinance whenever the partial application or discrimination in the classification is based on real and reasonable distinctions existing and affects all persons of the same class or pursuing the same conditions under the same circumstances." Hughes v. Board of Comm'rs, 319 S.W.2d 481, 485 (Tenn. 1958). Our supreme court previously has upheld a statute which, for limitation of actions purposes, treats "health care providers" differently than other tort defendants by imposing a three-year statute of repose, or "cap," on medical malpractice actions. Harrison v. Schrader, 569 S.W.2d 822, 825-27 (Tenn. 1978) (upholding the constitutionality of T.C.A. § 23-3415 (now § 29-26-116)). In Harrison v. Schrader, the supreme court noted the legislature's concern with the rising costs of medical malpractice insurance and the potential effects of this increase on the cost and availability of health care. Id. at 826-27. In upholding the validity of the challenged classification, the court held that the classification was reasonably related to the legislature's "objective of reducing and stabilizing insurance and health costs and protecting the public as a whole." Id. at 827.

We similarly uphold the validity of the classification of "health care practitioners" under the GTLA. Although some of the policy considerations behind the distinction made in the GTLA are different from those present in imposing a statute of repose for medical malpractice actions, both classifications may be justified by the legislative objective of protecting the public health. As recognized in Harrison v. Schrader, the legislature has an interest in ensuring the availability of quality health care to the citizens of this state. Harrison v. Schrader, 569 S.W.2d at 826. One method of achieving this legislative

11

objective is to hold the health care practitioner who also happens to be a governmental employee to the same standard of care as health care practitioners who are employed in the private sector. By exposing governmental health care practitioners to personal liability for any recovery in excess of the GTLA limits, the legislature has created an added incentive for such practitioners to conform with the standard of care applicable to their professions. Inasmuch as a reasonable justification exists for the classification or, at the very least, the reasonableness of the class is fairly debatable, we must uphold the challenged statute. Accordingly, we reverse that portion of the trial court's judgment invalidating the challenged statutory provisions on equal protection grounds.

## VI. The Defendants' Right to Jury Trial Challenge

We also reverse that portion of the trial court's judgment which invalidated the challenged statutory provisions on the ground that they violated the individual Defendants' right to a jury trial. The circuit courts have jurisdiction over actions brought under the GTLA, and they are required to hear and decide such actions "without the intervention of a jury, except as otherwise provided in § 29-20-313(b)." T.C.A. § 29-20-307 (Supp. 1994). Section 29-20-313, in turn, contains the following provisions:

> (a)    When one (1) or more defendants to a lawsuit claims to be an employee of a governmental entity as defined by § 29-20-107 and is therefore entitled to the governmental immunity granted by this chapter, it shall be a question of fact whether the defendant claiming immunity is such an employee. If the trier of fact determines that the defendant claiming immunity is not a governmental entity employee, the lawsuit as to that defendant shall proceed like any other civil case. If the trier of fact determines that the defendant claiming immunity is a governmental entity employee, the lawsuit as to that defendant shall proceed in accordance with the provisions of this chapter.
>
> (b)    When suit is brought in circuit court in a case in which there are multiple defendants, one (1) or more of which is a governmental entity or a governmental entity employee whose liability or lack thereof is to be determined based upon the provisions of this chapter and one (1) or more of which is not such governmental entity or governmental entity employee, the case shall be heard and decided by a jury upon the demand of any party. Nothing in this section shall be construed to abridge the right of any party to a trial by jury

12

> otherwise granted by the state or federal constitution or any
> statute.

T.C.A. § 29-20-313 (Supp. 1994).

The trial court ruled that the provisions of section 29-20-310 relating to health care practitioners are unconstitutional because, under sections 29-20-307 and 29-20-313 of the GTLA, health care practitioners who are employees of a governmental entity are not entitled to a jury trial. Section 29-20-313(a) provides that if the defendant is a governmental employee, the lawsuit as to that defendant shall proceed in accordance with the provisions of the GTLA, i.e. by the circuit court without the intervention of a jury. T.C.A. §§ 29-20-307, 29-20-313(a) (Supp. 1994). Nevertheless, we believe that the trial court's ruling is erroneous for two reasons.

In the first place, even if section 29-20-313 is construed as denying these Defendants the right to a jury trial, we fail to see why the challenged provisions of section 29-20-310 (as opposed to section 29-20-313) should be declared unconstitutional. Section 29-20-310 does not deprive the Defendants of the right to a jury trial; it merely removes the immunity of health care practitioners for any damages sought or judgments entered in excess of the GTLA's minimum limits. T.C.A. §§ 29-20-310(b), (c) (Supp. 1994). Rather than striking the challenged provisions of section 29-20-310 on the ground that they unconstitutionally deny the Defendants the right to a jury trial, we think that the more appropriate judicial approach would be merely to hold that section 29-20-313(a), as applied to these Defendants, impermissibly infringes on their right to a jury trial. In that case, the proper remedy would be to uphold section 29-20-310's provisions relative to health care practitioners but to grant such defendants a jury trial upon a timely demand therefor.[1] See, e.g., B.J.Y. v. M.A., 617 So. 2d 1061, 1064 (Fla. 1993) (invalidating portion of statute which denied putative father right to jury trial in paternity proceeding, but expressly upholding remainder of paternity statute).

---

[1] In this regard, the State appears to concede that these individual Defendants do have a constitutional right to a jury trial, provided such right is timely asserted. See, e.g., Johnson v. King, 426 S.W.2d 196, 199 (Tenn. 1968) (indicating that litigant in tort case has right to jury trial).

13

Secondly, and perhaps more importantly, we do not construe section 29-20-313 as denying the Defendants the right to a jury trial. The last sentence of subsection (b) of the statute provides that "[n]othing in this section shall be construed to abridge the right of any party to a trial by jury otherwise granted by the state or federal constitution or any statute." T.C.A. § 29-20-313(b) (Supp. 1994) (emphasis added). The Defendants contend that this sentence's reference to "this section" refers only to section 29-20-313(b) and not to the entire section 29-20-313 and that, therefore, the sentence does not save section 29-20-313(a) from being declared unconstitutional.

We disagree. This court has the obligation to uphold the constitutionality of the challenged statutory provisions "if there exists any reasonable construction which would satisfy the requirements of the constitution." Shelby County Election Comm'n v. Turner, 755 S.W.2d 774, 777 (Tenn. 1988); see also NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 30 (1937) (indicating that the "cardinal principle of statutory construction is to save and not to destroy" and that, "as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the act"). In enacting statutes, the legislature routinely refers to individual statutes as "sections" and to subparts thereof as "subsections." See, e.g., T.C.A. §§ 1-3-113, -116 (1985 & Supp. 1997). We conclude, therefore, that a reasonable construction of the final sentence of subsection (b) of section 29-20-313 is that the sentence applies to the entire section 29-20-313 and not just to subsection (b). Inasmuch as this construction of section 29-20-313 preserves a defendant's constitutional right to a jury trial under both subsections (a) and (b), we conclude that neither section 29-20-313 nor section 29-20-310 is unconstitutional.

## VII.  Conclusion

Having upheld the constitutionality of the challenged provisions of the GTLA relating to health care practitioners, we reverse the trial court's judgment to the extent that it dismisses Defendants Snyder and Bradley from this lawsuit, and we remand this cause for

14

further proceedings consistent with this opinion.  The trial court's dismissal of Defendants Insco and Jennings, however, is hereby affirmed.  Costs on appeal are taxed to Defendants Snyder and Bradley, for which execution may issue if necessary.

15

_____
HIGHERS, J.


CONCUR:


_____
CRAWFORD, P.J., W.S.


_____
LILLARD, J.